The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Cramer and the briefs and oral arguments before the Full Commission. The appealing parties have not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award with the exception of clarifying the stipulations of the parties and the modification to Finding of Fact Number 21.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a 9 May 1995 Pre-trial Order as:
STIPULATIONS
1. At the time of the admittedly compensable injury by accident the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant-employer at all relevant times.
3. Aetna Life Casualty Insurance Company was the workers' compensation carrier on the risk.
4. This case involves an admittedly compensable injury to plaintiff's left knee sustained on 1 March 1993.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of the admittedly compensable injury by accident the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant-employer at all relevant times.
3. Aetna Life Casualty Insurance Company was the workers' compensation carrier on the risk.
4. Plaintiff was forty-one years of age at the time of the accident on 1 March 1993. He was employed by defendant as a heavy equipment operator for a period of five years prior to the accident and received an average weekly wage of $513.38.
5. On 1 March 1993 plaintiff was attempting to load a backhoe onto a trailer when he saw the truck begin to move. He jumped a distance of approximately eight feet from the backhoe to the ground, twisting his left knee when he landed. He heard a popping sound and his leg felt numb and he began to experience pain in the knee.
6. Plaintiff was taken to Baptist Hospital. His left leg was swollen and bruised from his knee to his groin. He was diagnosed as having a depression fracture of the tibial plateau of his left leg.
7. Plaintiff came under the care of Dr. David Janeway, an orthopaedic surgeon, who first saw him on 8 March 1993. A tomogram indicated a minimal depression fracture at the tibial plateau of the left knee, with a possible small intra-articular fragment. Dr. Janeway continued to keep Plaintiff in a knee immobilizer to allow the fracture to heal.
8. An arthroscopy of the left knee was performed on 14 April 1993 during which Dr. Janeway removed the loose fragment, removed overgrown tissue from the lining of the knee, and shaved cartilage to give a smoother joint surface.
9. During his recovery plaintiff began to complain of tenderness and swelling in the inguinal area. Dr. Janeway also noticed varicosities in the left leg. Plaintiff has a history of problems with varicose veins in both legs dating back to his teens. In 1977 plaintiff had the veins in both legs surgically stripped to improve circulation. Dr. Janeway's opined that plaintiff's varicose veins problems had existed long before and were not caused by plaintiff's injury by accident of 1 March 1993.
10. On 5 May 1993 plaintiff was seen by Dr. Eduardo Gonzales, a general surgeon, regarding the varicose veins in his left leg. Dr. Gonzales recommended conservative treatment with support compression stockings. Dr. Gonzales' opined that plaintiff's varicose veins in the left leg pre-existed, took a long time to develop and were not caused by the 1 March 1993 injury by accident.
11. Pursuant to a Form 21 agreement between the parties, plaintiff received temporary total disability payments in the weekly amount of $342.27 beginning 2 March 1993.
12. On 19 July 1993 plaintiff returned to work. Due to continuing problems with swelling in his leg and groin, he was limited to office work. Disability payments were discontinued as of 2 August 1993. Plaintiff discontinued working on 9 August 1993, and disability payments were resumed beginning on that date.
13. On 13 September 1993, plaintiff underwent surgery by Dr. Bruce Middleton to repair a femoral hernia in his left groin area. Dr. Middleton opined that the hernia could have been a result of the injury sustained on 1 March 1993.
14. Plaintiff attempted to return to work in December 1993 but was laid off due to lack of work. Plaintiff's disability compensation payments were continued through 27 February 1994.
15. On 4 January 1994, Dr. Janeway released plaintiff for work with the limitation of no standing or walking for more than two hours in any given day and no prolonged carrying. On 21 February 1994, Dr. Janeway found plaintiff to be at maximum medical improvement with a 15 percent permanent partial disability in his left leg.
16. On 10 February 1994 plaintiff was seen by Dr. Gary Poehling for continuing problems with his knee joint and the increasing size of varicose veins in his leg and left groin. Surgery was not recommended and plaintiff was referred to Dr. Wayne Meredith. Following an examination on 22 February 1994 Dr. Meredith eliminated the possibility of a hernia, and diagnosed a lymph node in plaintiff's groin. The lymph node is not shown to be causally connected to the compensable injury. Dr. Meredith placed no work restriction on plaintiff, stating that he "can continue doing his work as he is doing now."
17. The greater weight of the medical evidence shows that plaintiff had a long history of varicose veins in his legs. The varicose veins problems in his left leg were not caused by or significantly aggravated by his accident of 1 March 1993.
18. Plaintiff's left femoral hernia was most likely caused by his accident of 1 March 1993 and therefore is compensable.
19. Following plaintiff's release to return to work by Dr. Janeway and Dr. Meredith's release in late February 1994 plaintiff made no attempt to locate employment. However, during the months of March, April and May 1994, plaintiff was placed under surveillance and was observed and videotaped doing manual work around his house. He spent several hours working on a concession trailer in his yard and spent at least one hour on a ten to twelve foot ladder doing repairs on the exterior of his house near the roofline. Plaintiff was able to stand for at least an hour at a time, bend, reach overhead and work with tools, climb the ladder, and walk without any apparent difficulty or distress.
20. As of 4 January 1994 plaintiff was capable of returning to gainful employment within the restrictions given by Dr. Janeway. By 21 February 1994 plaintiff had reached maximum medical improvement and continued to be capable of pursuing gainful employment. He made no effort to find suitable employment. Plaintiff's failure to return to work was due to his own failure to look for employment and to his failure to cooperate with rehabilitation efforts.
21. Defendant is entitled to a credit against the total partial disability due plaintiff equal to the amount of temporary total disability compensation paid to plaintiff after 4 January 1994.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 1 March 1993 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant which resulted in injury to plaintiff's left knee and a left femoral hernia. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's average weekly wage of $513.38 yields a compensation rate of $342.27.
3. Defendants are responsible for payment of all medical expenses incurred by plaintiff as a result of his injury by accident, including treatment for his hernia, for such treatment rendered as was reasonably necessary to effect a cure, or give relief, or lessen any period of disability. N.C. Gen. Stat. § 97-2(18), (19).
4. As a result of his injury by accident of 1 March 1993 plaintiff was temporarily totally disabled and is entitled to disability compensation at the rate of $342.27 per week from 2 March 1993 through 19 July 1993. Plaintiff's return to work at that time is designated as a trial return to work under N.C. Gen. Stat. § 97-32.1. Plaintiff is entitled to temporary total disability compensation from 9 August 1993 through 4 January 1994 when he had reached maximum medical improvement, and was capable of returning to gainful employment. N.C. Gen. Stat. § 97-29.
5. As a result of his injury by accident of 1 March 1993 plaintiff has sustained a fifteen percent permanent partial impairment of his left leg for which he is entitled to compensation at the rate of $342.47 per week for 30 weeks pursuant to N.C. Gen. Stat. § 97-31(15).
6. Other than his temporary disability, and fifteen percent permanent impairment of his left knee, the evidence fails to establish that plaintiff is entitled to any additional benefits. Plaintiff has made no effort to locate gainful employment and has otherwise failed to cooperate with rehabilitation efforts.In re Stone v. G. G. Builders, 346 N.C. 84 346 N.C. 154,484 S.E.2d 365 (1997). N.C. Gen. Stat. § 97-32.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Defendants shall pay plaintiff $342.27 per week for plaintiff's temporary total disability from 2 March 1993 through 19 July 1993 and from 9 August 193 through 4 January 1994 when plaintiff reached maximum medical improvement. The accrued compensation shall be paid in a lum sum, subject to the attorney's fees hereinafter awarded.
2. Defendants shall pay plaintiff compensation at the rate of $342.27 per week for 30 weeks for his 15 percent permanent impairment of his left leg. The accrued compensation shall be paid in a lump sum, subject to the attorney's fees hereinafter awarded.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of his injury by accident of 1 March 1993, including treatment rendered for his hernia, but not for his varicose veins.
4. A reasonable attorney fee of twenty-five percent of the net compensation due plaintiff under Paragraphs 1 and 2 of this Award is approved for plaintiff's counsel to be deducted from that sum and paid directly to Plaintiff's counsel.
5. Defendant's shall receive a credit against the temporary partial disability due plaintiff equal to the amount of temporary partial disability compensation paid to plaintiff between 4 January 1994 and 21 February 1994.
6. Defendants shall pay for the costs due the Commission.
This is ___ January 1998.
 S/ ________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ _______________ THOMAS J. BOLCH COMMISSIONER
S/ _______________ CHRISTOPHER SCOTT COMMISSIONER
DCS/bjp